**UNITED STATES DISTRICT COURT**
**DISTRICT OF MARYLAND**

CHAMBERS OF
TIMOTHY J. SULLIVAN
UNITED STATES MAGISTRATE JUDGE

101 WEST LOMBARD STREET
BALTIMORE, MARYLAND 21201
(410) 962-4560
Fax (410) 962-3630

February 22, 2013

LETTER TO COUNSEL:

RE:     *Bobbi Jo Bautista v. Michael Astrue, Commissioner of Social Security Administration;*
        Civil No. TJS-11-1651

Dear Counsel:

On June 15, 2011, the Plaintiff, Bobbi Jo Bautista, petitioned this Court to review the Social Security Administration's final decision to deny her Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") benefits. (ECF No. 1). The parties have filed cross-motions for summary judgment. (ECF Nos. 10, 15). These motions have been referred to the undersigned with the parties' consent pursuant to 28 U.S.C. § 636 and Local Rule 301.[1] (ECF Nos. 3, 5). I find that no hearing is necessary. Local Rule 105.6. This Court must uphold the decision of the agency if it is supported by substantial evidence and if the agency employed proper legal standards. 42 U.S.C. §§ 405(g), 1383(c)(3); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). Following its review, this Court may affirm, modify, or reverse the Commissioner, with or without a remand. *See* 42 U.S.C. § 405(g); *Melkonyan v. Sullivan*, 501 U.S. 89 (1991). Under that standard, I will grant the Commissioner's motion and deny the Plaintiff's motion. This letter explains my rationale.

The Plaintiff, Bobbi Jo Bautista ("Ms. Bautista") filed applications for DIB and SSI. (Tr. 128-132). In both claims, Ms. Bautista claimed alleged disability beginning on October 4, 2006. (Tr. 128-132). Both claims were denied initially on April 2, 2009 and on reconsideration on November 30, 3009. (Tr. 66-70, 79-82). A hearing was held before an Administrative Law Judge ("ALJ") on September 17, 2010. (Tr. 27-57). On October 29, 2010, the ALJ determined that Ms. Bautista was disabled under the Social Security Act beginning on October 4, 2006 and ending on June 24, 2008. (Tr. 12-26). The Appeals Council denied Ms. Bautista's request for review on November 10, 2010 (Tr. 1-4), so the ALJ's decision constitutes the final, reviewable decision of the agency.

The ALJ found that Ms. Bautista was disabled within the meaning of the Social Security Act from October 4, 2006 through June 24, 2008. (Tr. 16, 19-22). The ALJ concluded that Ms. Bautista has severe impairments including degenerative disc disease; neck pain; obesity; history of asthma; bipolar disorder, mixed mild; diagnosis of post-traumatic stress disorder; and,

---

[1] This case was originally assigned to the Honorable Paul W. Grimm, who is now a United States District Judge. On December 6, 2012, this case was reassigned to Magistrate Judge Stephanie A. Gallagher. On January 30, 2013, this case was reassigned to me.

substance abuse. (Tr. 20). Based on these impairments, the ALJ found that Ms. Bautista's "pain and other physical limitations preclude even . . . sedentary work." (Tr. 21). The ALJ also found, based on the Vocational Expert's ("VE") testimony, that there were no jobs in the national economy that Ms. Bautista could perform. (Tr. 22). Therefore, the ALJ concluded that Ms. Bautista was under a disability as defined by the Social Security Act from October 4, 2006 through June 24, 2008. (Tr. 22).

The ALJ found that this disability ended on June 25, 2008 when medical improvement occurred. The ALJ found that "the claimant's mental and physical health conditions considerably improved and she is no longer disabled, even though her illnesses remain severe." (Tr. 22). The ALJ determined that, from June 25, 2008 through the date of his decision, Ms. Bautista retained the residual functional capacity ("RFC") to:

> perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a); she can never climb ladders, ropes and scaffolds, and she can occasionally perform all other posturals. The claimant must also avoid concentrated exposure to irritants. She is limited to performing unskilled work that is repetitive in nature and includes following a routine. She is further limited to performing work with general goals vs. production rate goals; and can only have occasional interaction with others; few, if any changes in work setting, and no need to plan or set goals.

(Tr. 23).

In reaching this conclusion, the ALJ "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 404.1529 and SSRs 96-4p and 96-7p." (Tr. 23). The ALJ also considered the medical opinion evidence in the record. (Tr. 23). The ALJ considered Ms. Bautista's credibility and concluded that her statements "concerning the intensity, persistence and limiting effects of [her] symptoms are not credible beginning on June 25, 2008, to the extent they are inconsistent with the residual functional capacity assessment . . . ." (Tr. 23). The ALJ found that "[t]here is no medical evidence in the record to suggest that the claimant's abilities to work have gotten worse since June 2008," and that as of June 25, 2008, her condition had improved such that she was capable of returning to work. (Tr. 23)

Based on the ALJ's review of the complete record, his determination of Ms. Bautista's RFC and his consideration of the VE's testimony, the ALJ found that Ms. Bautista was, beginning on June 25, 2008, capable of "making a successful adjustment to work." (Tr. 25-26). Ultimately, the ALJ determined that considering Ms. Bautista's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that she can perform. (Tr. 26). After detailing the findings, based on the record and the testimony, the ALJ found that Ms. Bautista was not disabled within the meaning of the Social Security Act after June 25, 2008. (Tr. 26).

Ms. Bautista contends (1) that the ALJ failed to follow the eight-step medical improvement standard applicable in determining whether disability benefits should be terminated; (2) that the ALJ failed to follow the treating physician rule; and (3) that the ALJ

failed to properly assign weight to the opinion evidence in the record.  The Commissioner has responded to each argument.  I will address each of these arguments below.

First, Ms. Bautista argues that the ALJ failed to follow the eight-step medical improvement standard required to determine whether a disability has ceased, does not exist, or is not disabling.  20 C.F.R. §§ 404.1594, 416.994.  Ms. Bautista's argument consists of three sub-arguments: first, that the ALJ merely concluded that medical improvement had occurred; second, that the ALJ failed to properly analyze her ability to work based on a new RFC determination; and third, that the ALJ failed to show that there had been a decrease in medical severity based on improvements in the symptoms, signs and laboratory findings associated with her impairments. (ECF No. 10 at 8-12).

In addition to the five-step sequential evaluation process used for determining whether a claimant is disabled, *see* 20 C.F.R. §§ 404.1520, 416.920, there are additional sequential evaluation processes to determine whether a disability continues or has terminated through the date of the ALJ's decision.  For DIB determinations, there is an eight-step sequential evaluation process, and a seven-step sequential evaluation process for SSI determination.  20 C.F.R. §§ 404.1594, 416.994.  Both processes are largely the same.  The primary issue in this case is whether the ALJ's finding that Ms. Bautista medically improved is supported by substantial evidence.  Medical improvement is defined as "any decrease in the medical severity of [the] impairment(s) which was present at the time of the most recent favorable medical decision" of disability.  20 C.F.R. §§ 404.1594(b)(1), 416.994(b)(1).  The determination of "a decrease in medical severity must be based on changes (improvement) in the symptoms, signs and/or laboratory findings associated with [the] impairment(s)."  *Id.*  To determine whether medical improvement has occurred, the severity of the claimant's current medical condition is compared to the severity of the condition "at the time of the most recent medical decision that [claimant was] disabled."  *Id.*  Additionally, medical improvement is related to the ability to work if the improvement results in an "increase in [the] functional capacity to do basic work activities."  20 C.F.R. §§ 404.1594(b)(3), 416.994(b)(3).

Ms. Bautista's allegation that "the ALJ summarily concluded that medical improvement had occurred as of June 25, 2008" is refuted by the ALJ's decision itself.  (ECF No. 10 at 9).  In his decision, the ALJ set forth findings of fact that clarify his reasoning for finding Ms. Bautista's medical improvement.  (Tr. 20-22).  The ALJ considered the opinions of state physicians and psychologists, and the physicians who examined and treated Ms. Bautista.  (Tr. 20-24).  The ALJ concluded that the opinions of the physicians who examined Ms. Bautista in March and June of 2008 (they concluded that she could return to work), were consistent with the objective medical evidence in the record as a whole.  As the ALJ's rationale is supported by credible medical evidence in the record, it is supported by substantial evidence.

Similarly, Ms. Bautista's allegation that the ALJ's RFC findings are not supported by substantial evidence lacks merit.  The ALJ considered the opinions of several examining physicians, in addition to Ms. Bautista's testimony concerning her daily activities, and the objective medical evidence in the record.  (Tr. 20-24).  Most notably among these physicians, in March 2008, Ms. Bautista was evaluated by Clifford Andrew, M.D., Ph.D., a neurological specialist.  (Tr. 330).  Dr. Andrew's note stated that Ms. Bautista had "been undergoing physical

therapy 2-3 times per week," and that an examination revealed "improved strength with ability to lift hands over her shoulder level and her hands behind her back." (Tr. 330). Dr. Andrew formulated a plan for Ms. Bautista, "recommend[ing] that she take steps to return to work on a part-time basis, initially four hours three days per week for one month then 20 hours/week for an additional one month with attempt to return to full-time employment with breaks in two months." (Tr. 330).

Then, in June 2008, Gary W. Pushkin, M.D. evaluated Ms. Bautista at his office. A physical examination revealed "no obvious deformity or defect" of her cervical spine, and a "full range of motion . . . [with] discomfort at extremes of motion." (Tr. 390). Dr. Pushkin stated that he saw "no reason why she cannot return to work as a dispatcher." (Tr. 391). Dr. Pushkin went on to note that she could, in his opinion, "sit throughout an eight-hour day as long as she could occasionally get up and take breaks, . . . lift or carry occasionally 10-20 pounds and more frequently up to 10 pounds, . . . use her hands and feet without any restrictions," and generally work at a sedentary activity level. (Tr. 391).

In arriving at his RFC determination, the ALJ took into account that evidence that he found persuasive and consistent with other credible evidence in the record. The ALJ's RFC determination takes into account Ms. Bautista's physical and mental limitations, as well as her environmental limitations. The ALJ's RFC determination is supported by more than substantial evidence. Ms. Bautista's arguments to the contrary have no merit.

Second, Ms. Bautista claims that the ALJ did not follow the treating physician rule. Ms. Bautista argues "[t]he ALJ's decision to dismiss the opinions of Dr. Kankam and Dr. Benjamin [was] clearly erroneous and not based on substantial evidence." (ECF No. 10 at 14). The Commissioner argues that because Dr. Kankam's and Dr. Benjamin's opinions are inconsistent with other persuasive medical evidence in the record, their opinions are not entitled to controlling weight. (ECF No. 15-1 at 14).

The opinion of a treating physician is entitled to controlling weight when two conditions are met: 1) it is well-supported by medically acceptable clinical laboratory diagnostic techniques and 2) it is consistent with other substantial evidence in the record. *See Craig*, 76 F.3d at 590; see also 20 C.F.R. §§ 404.1527(c), 416.927(c).[2] Federal regulations require an ALJ to assess a number of factors when considering what weight to assign to the medical opinions presented. 20 C.F.R. §§ 404.1527(c), 416.927(c). While treating source opinions on issues reserved to the Commissioner, such as determining a claimant's RFC, are not entitled to controlling weight, the ALJ must still evaluate all of the evidence in the case record to determine the extent to which the physician's opinion is supported by the record as a whole. *Id.* These factors include: (1) the examining relationship between the physician and the claimant; (2) the treatment relationship between the physician and the claimant; (3) the extent to which a medical opinion is supported by relevant evidence; (4) the consistency of a medical opinion with the record as a whole; and, (5) whether the physician's opinion relates to an area in which they are a specialist. *Id.*

---

[2] Effective March 26, 2012, the Commissioner's regulations concerning medical opinions were revised, but without substantive change.

While the ALJ must generally give more weight to a treating physician's opinion, *see* 20 C.F.R. §§ 404.1527(c), 416.927(c), where a treating physician's opinion is not supported by clinical evidence or is inconsistent with other substantial evidence, it should be accorded significantly less weight. *Craig*, 76 F.3d at 590; 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). Specifically, an ALJ may attribute little weight to a treating source opinion when it is unsupported, inconsistent with other evidence in the record, or based on a short term relationship. *Id.*; *see also Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir. 1992) ("The ALJ may choose to give less weight to the testimony of a treating physician if there is persuasive contrary evidence[.]")  The ALJ is also not required to give controlling weight to a treating physician's opinion on the ultimate issue of disability.  20 C.F.R. §§ 404.1527(d), 416.927(d); SSR 96–5p, 1996 WL 374183.  Pursuant to 20 C.F.R. §§ 404.1527(e)(2)(ii) and 416.927(e)(2)(ii), the ALJ is required to "explain in the decision the weight given to . . . any opinions from treating sources, nonteaching sources, and other non-examining sources who do not work for [the Social Security Administration]."

The ALJ's finding that Dr. Kankam's opinion was "very inconsistent with the claimant's treatment notes and the GAF scores therein" is supported by substantial evidence.  (Tr. 24).  The ALJ noted that in treatment notes dated July 1, 2010, Dr. Kankam concluded that Ms. Bautista's bipolar disorder was "improved" and her GAF score of 70 was "increasing."  (Tr. 638).  The ALJ properly found that this evidence, along with the other objective medical evidence in the record, and Ms. Bautista's activities of daily living, was inconsistent with Dr. Kankam's opinion that Ms. Bautista's mental functioning had somehow deteriorated.  Ms. Bautista makes much of the fluctuation in her GAF scores,[3] but "the Commissioner has declined to endorse the GAF scale for 'use in the Social Security and SSI disability programs,' and has indicated that GAF scores have no 'direct correlation to the severity requirements of the mental disorders listings.'"  *Wind v. Barnhart*, 133 F. App'x 684, 692 n.5, 2005 WL 1317040 (11th Cir. June 2, 2005) (quoting 65 Fed. Reg. 50746, 50764-65 (Aug. 21, 2000)).  I find no error in the ALJ's decision not to analyze

---

[3] The Global Assessment of Functioning ("GAF") scale is a method of considering psychological, social, and occupational function on a hypothetical continuum of mental health. *Johnson v. Astrue*, No. TMD-10-947, 2011 WL 5149574 at *2 (D. Md. Oct. 27, 2011) (citing *Diagnostic and Statistical Manual of Mental Disorders,* Fourth Ed.).  A GAF score is a

> subjective determination that represents the clinician's judgment of the individual's overall level of functioning. It ranges from 100 (superior functioning) to 1 (persistent danger of severely hurting self or others, persistent inability to maintain minimal personal hygiene, or serious suicidal act with clear expectation of death). . . . A GAF rating of 51 to 60 signals the existence of moderate difficulty in social or occupational functioning.

*White v. Comm'r of Social Sec.,* 572 F.3d 272, 276 (6th Cir. 2009) (citing *Edwards v. Barnhart,* 383 F. Supp. 2d 920, 924 n.1 (E.D. Mich. 2005)).  A GAF rating of 61-70 indicates some mild symptoms, but generally signals a person "functioning pretty well, [with] some meaningful interpersonal relationships." *Diagnostic and Statistical Manual of Mental Disorders,* Fourth Ed. A GAF rating of 71-80 indicates a person with "no more than slight impairment in social, occupational or school functioning (e.g., temporarily falling behind in schoolwork)." *Id.*

each GAF score individually, particularly when the ALJ considered the scores as a whole. Because Dr. Kankam's opinions are not supported by medically acceptable clinical and laboratory diagnostic techniques, the ALJ's rejection of the opinions was proper. *See* 20 C.F.R. §§ 404.1527(c), 416.927(c).

The ALJ also properly rejected Dr. Benjamin's opinion expressed in a brief treatment note dated June 16, 2010 which stated that Ms. Bautista "isn't able to work because of chronic back pain," and "can't stay in any position for more than a couple of hours." (Tr. 627). First, Dr. Benjamin's conclusory statement that Ms. Bautista "isn't able to work" is an administrative finding, dispositive to the case, and is reserved to the Commissioner. 20 C.F.R. §§ 404.1527(d), 416.927(d). Second, Dr. Benjamin's opinion is not supported by the overall medical evidence of the record, particularly the opinions of Dr. Andrew and Dr. Pushkin. (Tr. 330, 390-391). The ALJ gave little weight to Dr. Benjamin's opinions due to his "brief treatment note comment . . . [as it] does not have the medical evidence of record" to support his assessment. (Tr. 24). For the same reason, the ALJ also rejected the opinions expressed in Dr. Benjamin's 402B, where "he indicated the claimant suffers from back pain and cervical radiculopathy and is limited to sedentary lifting and sitting for 3 hours." (Tr. 24). Dr. Benjamin's opinions are not supported by medically acceptable clinical and laboratory diagnostic techniques. As such, the ALJ's rejection of his opinions was proper. *See* 20 C.F.R. §§ 404.1527(c), 416.927(c); *see also Throckmorton v. U.S. Dep't of Health & Human Servs.*, 932 F.2d 295, 297 n.1 (4th Cir. 1990).

The ALJ properly considered and evaluated the medical opinions contained in the record, including those of Dr. Benjamin and Dr. Kankam, and there was substantial evidence to support his conclusions. *Craig*, 76 F.3d at 590. (stating that conclusory opinions about claimant's subjective complaints are not entitled to particular deference).

Third, Ms. Bautista argues that the ALJ failed to assign weight to all of the opinion evidence in the record. (ECF No. 10 at 15). The gravamen of the alleged error is that the ALJ failed "to specifically indicate what evidence is accepted or rejected in making the RFC finding." (ECF No. 10 at 15). And although it is clear which opinion evidence the ALJ gave little weight, Ms. Bautista contends, it is "entirely unclear from the ALJ's decision which opinions he actually accepted in his decision." (ECF No. 10 at 16). Ms. Bautista's reliance on *Beckman v. Apfel*, No. WMN-99-3696, 2000 WL 1916316 (D. Md. Dec. 15, 2000) is misplaced. In *Beckman*, the Court concluded that "the ALJ had failed to indicate what evidence he specifically accepted or rejected in making his RFC finding; nor did he cite to relevant medical evidence he may have relied on to arrive at the finding." *Beckman*, 2000 WL 1916316 at *7. These concerns are not present in Ms. Bautista's case as the ALJ carefully considered the evidence he found most credible, and cited to medical evidence in the record to support his finding. "[A]n ALJ is not tasked with the 'impossible burden of mentioning every piece of evidence' that may be placed into the Administrative Record." *McDaniel v. Astrue*, No. 1:09cv109, 2010 WL 3211050, at *6 (W.D.N.C. July 22, 2010) (quoting *Parks v. Sullivan*, 766 F. Supp. 627, 635 (N.D. Ill. 1991)).

Assuming, for the sake of argument, that the ALJ erred by failing to assign weight to all of the opinion evidence in the record, the error could not have affected the outcome of the proceedings. Putting to the side the opinions of Ms. Bautista's treating physicians (which the ALJ rejected), there is substantial medical evidence in the record to support the ALJ's

determination that Ms. Bautista is capable of performing work at jobs that exist in significant numbers the national economy.  The medical evidence, particularly the opinions of Dr. Andrew and Dr. Pushkin, is outlined above.  The ALJ should have offered a fuller explanation of the weight he gave to this evidence, but it is clear from his opinion that he found it credible, persuasive, and consistent with other objective medical evidence in the record.  Remanding this case for the ALJ to state simply that, when the error is harmless, would be a waste of resources.  *See Spiva v. Astrue*, 628 F.3d 346 (7th Cir. 2010) ("If it is predictable with great confidence that the agency will reinstate its decision on remand because the decision is overwhelmingly supported by the record though the agency's original opinion failed to marshal that support, then remanding is a waste of time.")  In addition, in response to a question about whether there were jobs for a hypothetical person of Ms. Bautista's age, education, work experience, and limitations, the VE testified that there were jobs that existed in significant numbers in the national economy.  (Tr. 53-55).  The VE testified about jobs that a hypothetical person sharing Ms. Bautista's characteristics could perform: document preparer, dresser, and sorter.  (Tr. 53-54).  Thus, substantial evidence supports the ALJ's determinations that Ms. Bautista was not disabled beginning June 25, 2008, and could perform jobs existing in significant numbers in the national economy.

After reviewing the record, this Court finds that substantial evidence supports the ALJ's determination that Ms. Bautista is not disabled within the meaning of the Social Security Act as of June 25, 2008.  Accordingly, for the reasons set forth herein, Ms. Bautista's motion for summary judgment (ECF No. 10) will be DENIED and the Commissioner's motion for summary judgment (ECF No. 15) will be GRANTED.  The Clerk is hereby directed to CLOSE this case.

Despite the informal nature of this letter, it should be flagged as an opinion and docketed as such.  An implementing Order follows.

Sincerely yours,

/s/
Timothy J. Sullivan
United States Magistrate Judge

7